PHELPS (BENTLEY v.). See Cases Nos. 1,-331 and 1,332.

## Case No. 11,072.

### PHELPS et al. v. BROWN et al.

[4 Blatchf. 362; 1 Fish. Pat. Cas. 479; Merw. Pat. Inv. 701; 4 Wkly. Law Gaz. 183.] [1]

Circuit Court, D. Connecticut. Sept. 24, 1859.

PATENTS—PRIORITY—FIRST INVENTOR—NOTICE OF INTERFERING PATENT—PURPOSE OF CAVEAT.

1. C. filed in the patent office a caveat, under section 12 of the patent act of July 4, 1836 (5 Stat. 121). Three months afterwards, M. filed a caveat for the same invention. Seven months after that, C. applied for a patent for the invention, which was granted two months after his application. Fifteen months after the granting of the patent to C., a patent was granted to M. for the same invention. No notice was given by the commissioner of patents to M., of the application of C. In a suit brought by C., for the infringement of his patent, against parties holding under the patent to M.: *Held*, that if M. in fact first discovered the invention, and if, when C. applied for his patent, M. was using reasonable diligence in adapting and perfecting his invention, although he had not then given practical shape to his discovery, C. had unjustly obtained his patent, within the meaning of section 15 of the act, and could not maintain the suit.

2. Whether the commissioner of patents had power to issue the patent to C., in violation of the provisions of section 12, which required him to give notice to M. of the filing of the application by C., quere.

3. But M. cannot be prejudiced by the omission to give him the notice.

4. The 12th and 15th sections of the act were designed to protect the right of the first inventor, although he was not the first to adapt his invention to practical use, provided he has filed his caveat and has used reasonable diligence in perfecting his discovery.

5. The purpose of the caveat is to save an inventor from the effect of the rule of law, which gives to the inventor who first adapts his invention to practical use the right to the grant of the patent.

[2][This was a motion for a new trial. The plaintiffs [Anson G. Phelps and others] had brought suit against the defendants [James Brown and others], a corporation under the laws of Connecticut, to recover damages for the alleged infringement of letters patent [No. 12,227] for an "improvement in machines for manufacturing brass kettles," granted to plaintiffs as assignees of Lyman C. Camp, January 12, 1855. The defendants claimed under letters patent for substantially the same machine granted to Orlando W. Minard, April, 1856. Camp filed a caveat and drawing, describing his machine, January 16, 1854, and Minard filed a caveat and drawing containing a description of his machine, April 17, 1854. The application of Camp was filed November, 1854, but no notice was given to Minard of its pendency, and the patent issued without interference or opposition. There was proof tending to show that Camp had made his invention as early as 1848, and completed a practical machine in January, 1854, and that Minard had made his discovery as early as 1847, and completed a practical working machine in October, 1854. Thereupon the plaintiffs' counsel prayed the court to instruct the jury, that, "if they should find that Lyman C. Camp was an original and bona fide discoverer of the combination claimed in the letters patent granted to the plaintiffs as his assignees, and was the first who succeeded in reducing his idea to practice by embodying and carrying it into practical operation, in the form adapted to practical use, said letters patent were valid, unless they were fraudulently obtained for that which was, in fact, invented or discovered by another who was using reasonable diligence in adapting and perfecting the same; and, that, if the jury should find that said Camp and Minard were both bona fide original and independent inventors, and that said Camp had first succeeded in perfecting his invention and adapting it to practical use, the plaintiffs were rightfully entitled to their patent therefor, even though they should find that said Minard had first conceived the idea of said combinations, and was, at the time of the plaintiffs' application and of the granting of their patent, using reasonable diligence in adapting and perfecting the same."

[But the court (INGERSOLL, J.) refused so to charge the jury; and, on the contrary, instructed them that, "although it was true, as was claimed by the plaintiffs, that it was not enough, to defeat a patent already issued, that another had before conceived the possibility of effecting what the patentee accomplished, but that to constitute a prior invention the party alleged to have produced it must have reduced his idea to practice and embodied it in some distinct form and adapted it to practical use, if, nevertheless, they should find that Minard had succeeded in establishing another claim and ground of defense the plaintiffs must fail of a recovery. That other claim was this: 'That Minard was the first discoverer and inventor of the combination, and that, although he might not, at the time of the application by Camp

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and the opinion are from 4 Blatchf. 362. The statement is from 1 Fish. Pat. Cas. 479. Merw. Pat. Inv. 701, contains only a partial report.]

[2] [From 1 Fish. Pat. Cas. 479.]

for a patent, have given any particular shape to his discovery, yet, that when said application was made Minard was the first discoverer and inventor, and that while he was using reasonable diligence in adapting and perfecting his invention Camp unjustly obtained a patent for the same.' The patent act of 1836, in section 15 thereof, provides among other things that a patent issued shall be void if it has been unjustly obtained for that which was invented or discovered by another who, at the time the patent was obtained, was using reasonable diligence to adapt and perfect the same.

["When the patent to the plaintiffs was issued, there was a caveat filed by Minard in the patent office. It was the duty of the commissioner, before he issued a patent on the application of Camp, to have notified Minard so that he could present his claim to a prior invention. That duty was not performed by the commissioner. Contrary to his duty he issued the patent to the plaintiffs without any notice to Minard. The patent was, therefore, irregularly issued. If, therefore, Minard was the original discoverer of the invention or idea embraced in the combination, and if, when the patent was issued to the plaintiffs, the caveat of Minard was on file in the patent office; if no notice was given to Minard by the commissioner, and if, when the application for the patent was made, and when the same issued to the plaintiffs, Minard was using reasonable diligence to adapt and perfect the same, and did perfect the combination patented, then the patent to the plaintiffs, so far as it respects Minard and those claiming under him, was unjustly obtained and can not be made use of to prevent Minard, with those claiming under him, from using the combination described in his patent." The jury found a verdict for the defendants, and the plaintiffs moved for a new trial.][2]

R. J. Ingersoll and C. M. Keller, for plaintiffs.

N. J. Buel, W. D. Wooster, and R. S. Baldwin, for defendants.

Before NELSON, Circuit Justice, and INGERSOLL, District Judge.

NELSON, Circuit Justice. The 12th section of the patent act of July 4, 1836 (5 Stat. 121), provides for the filing of a caveat in the confidential archives of the patent office, and that, if application shall be made by any other person within a year from the filing of the caveat, for a patent for an invention that shall interfere with the one described in the caveat, it shall be the duty of the commissioner to give notice of the application to the person filing the caveat, who shall, within three months, file his descrip-

tion, specification, drawings and model, and if, in the opinion of the commissioner, the specifications of claim interfere with each other, like proceedings shall be had as in the case of interfering applications. The 15th section specifies, among other things, as a defence to an action for the infringement of a patent, that the plaintiff "had surreptitiously or unjustly obtained the patent for that which was in fact invented or discovered by another, who was using reasonable diligence in adapting and perfecting the same." The instructions of the court to the jury turn on these two provisions of the law.

There is some difficulty in maintaining the power of the commissioner to issue the patent to the plaintiffs, within the terms of the 12th section, providing for the filing of a caveat, and in upholding such patent against the right of a party who has complied with the provisions of that section. The section directs that the commissioner shall, instead of issuing the patent, file the papers accompanying the subsequent application, pending the force of the caveat, and that if, in his opinion, there is an interference, then such proceedings shall be had as in the case of interfering applications. These proceedings will be found in the 8th section of the act. But we are of opinion, that the case falls within the scope and meaning of the defence prescribed in the 15th section, already referred to. It is true, there is nothing in the case implicating the good faith of Camp or of his assignees, and hence the injustice relied on is rather injustice in the abstract than injustice resulting from any intentional wrong. We are inclined, however, to think that the term was used and intended to be used in its broadest sense; and that the two provisions, the 12th and the 15th sections, taken together, were designed to protect the right of the first inventor, although he was not the first to adapt his invention to practical use, provided he has filed his caveat and has used reasonable diligence in perfecting his discovery. The purpose of the caveat is to save the discoverer from the effect of the rule of law which gives to the inventor who first adapts his invention to practical use the right to the grant of the patent; and, in case the commissioner complies with the terms of the 12th section, it does secure him against the effect of that rule. It is not surprising, in the multiplicity of applications before the commissioner, that he should accidentally overlook a caveat filed some time before the making of an application by another party, and, doubtless, that officer issued the second patent in this case, with the view that the patentee might have an opportunity of correcting the error. He should not be prejudiced by the accidental omission to give him the notice. A new trial must be denied.

---

[2] [From 1 Fish. Pat. Cas. 479.]